**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Abdoul Karim Niada,<br>Petitioner,<br>v.<br>Christopher McGregor, et al.,<br>Respondents. | No. CV-26-06791-PHX-JZB<br>**ORDER** |

Pending before the Court is Petitioner's "Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief" ("Petition for Writ of Habeas Corpus"). (Doc. 1.) In the instant Petition, Petitioner asserts—in and amongst other claims—that: (1) Respondents unlawfully re-detained Petitioner under 8 C.F.R. § 241.4(l), the *Accardi* doctrine, and the Fifth Amendment; and (2) Respondents' attempt to remove him to Cameroon, a third country that Petitioner is not originally from, without notice and a chance to be heard violates the Due Process Clause of the Fifth Amendment. (*Id.* at 10–11.) Because Petitioner's re-detention without notice and an informal interview shortly after being detained violated Respondents' own governing regulations, and given that binding Ninth Circuit Court of Appeals precedent demands process in attempting to remove a noncitizen to a country they are not originally from, the Court shall grant Petitioner's Petition in part.

## I. BACKGROUND.

Petitioner is a native and citizen of Burkina Faso. (Doc. 1 at 1.) Petitioner entered

the United States near San Luis, AZ, on August 11, 2023. (*Id.* at 5); (doc. 14-1 at 2.) On February 13, 2024, an Immigration Judge ("IJ"), finding that Petitioner's fear of future prosecution on account of his religion was well founded, granted withholding of removal to Burkina Faso. (Doc. 1 at 5.) The Department of Homeland Security ("DHS") appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). (*Id.*) That appeal was dismissed on June 28, 2024. (*Id.*)

Since his entry into the country in August of 2023 to November 13, 2024, Petitioner was detained in Immigration and Customs Enforcement ("ICE") custody. *See* (doc. 14-1 at 2–3.) On November 13, 2024, Petitioner was released on an Order of Supervision ("OSUP"). (Doc. 1-1 at 170–72.) The OSUP, while originally filed on November 7, 2024, the OSUP was not served upon Petitioner until November 13, 2024. (*Id.* at 172.) Between his release on his OSUP to his re-detention, Petitioner complied with his OSUP's requirements and did not commit any crimes. (Doc. 1 at 6.)

On September 16, 2026, Petitioner filed a Motion to Reopen his immigration case with the BIA. (Doc. 14-1 at 3.) On September 19, 2026, unbeknownst to Petitioner, the Republic of Cameroon accepted him for third country removal. (*Id.*); (doc. 1-1 at 3–5.) No travel documents were provided. (*Id.*) On the same date, and similarly unbeknownst to Petitioner, ICE scheduled him for a removal flight on September 27, 2026. (Doc. 14-1 at 3); (doc. 1-1 at 3–5.)

On September 22, 2026, at around 8:45 a.m., Petitioner and his counsel arrived at the ICE Enforcement and Removal Operations Phoenix Field Office for a scheduled ICE check-in. (Doc. 1-1 at 3.) After waiting for about an hour-and-a-half, an ICE agent approached Petitioner and his counsel, and orally notified them that Petitioner would be detained, and that ICE had designated Cameroon as a third country of removal for Petitioner. (*Id.*) Petitioner's counsel, in a sworn and notarized statement, asserted that at no time did ICE provide Petitioner or counsel with any written notice of decision to remove him to Cameroon or with any notice of their intent to re-detain Petitioner. (*Id.* at 3–5.)

On September 22, 2026, Petitioner filed both the instant Petition and an "Emergency

Motion for Temporary Restraining Order and Injunctive Relief" ("Motion for TRO"). (Docs. 1–2.) On September 23, 2026, this Court ordered Respondents to file a status update as to their attempts to remove Petitioner to Cameroon or another third country. (Doc. 7.) On September 24, 2026, Respondents filed a timely Status Report, wherein they state that, "[a]s asserted in the Declaration of Vu Cam, Acting Unit Chief, ICE intends to remove the Petitioner to the Republic of Cameroon (Cameroon) on or around September 27, 2026." (Doc. 8 at 1) (emphasis removed). Although it is not eminently clear, it appears, based off of Petitioner's filings, that he was not previously notified that Respondents intended to remove him on September 27, 2026—five days after he was detained. *See* (docs. 1, 1-1, 2, 9, 15.)

Given Respondents' Status Report, the Court granted the Motion for TRO to the limited extent that Respondents were enjoined from removing Petitioner from the country pending full adjudication on his Motion for TRO. (Doc. 10.) Following full briefing on the Motion for TRO, on September 25, 2026, the Court granted the Motion in part, enjoining Petitioner's removal from the United States and transfer from the District of Arizona for fourteen days. (Doc. 13 at 5–6.)

Since the Court's order granting the Motion for TRO in part, Respondents filed their Response on September 30, 2026, and Petitioner filed his Reply on October 1, 2026. (Docs. 14–15.)

## II. 28 U.S.C. § 2241 Writ of Habeas Corpus.

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ" makes clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'") (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807)); *cf. In re Kaine*,

55 U.S. (14 How.) 103 (1852) (applying the writ of habeas corpus in the immigration context). The Supreme Court has made clear that § 2241 applies to noncitizens[1] challenging their immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Because Petitioner challenges the constitutionality of his civil detention, the Court has jurisdiction to address the instant Petition. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order[.]").

## III. DISCUSSION.

Petitioner asserts four grounds for relief in his Petition: (1) Respondents' attempted removal of Petitioner to a third country that Petitioner is not originally from without written notice and a meaningful opportunity to raise a fear-based claims violates 8 U.S.C. § 1231(b)(3), the Foreign Affairs Reform and Restructuring Act of 1998, Implementing Regulations, and the Administrative Procedures Act; (2) Respondents' attempted third-country removal without notice and "an opportunity to present objections" violates the Due Process Clause of the Fifth Amendment; (3) Respondents' failure to provide notice to Petitioner of the reasons for revoking his OSUP and "affording him an informal interview" violated 8 C.F.R. § 241.4(l), *Accardi*, and Fifth Amendment; and (4) a *Zadvydas* claim for unlawful detention. (Doc. 1 at 10–12.)

Respondents, in opposition, assert that Petitioner's Due Process claim as to third-country removal is barred as duplicative of the class relief sought in *D.V.D. v. United States*

[1] Undersigned shall use the term 'noncitizen' unless a quoted statute or court decision uses the term 'alien.' This usage is congruent with the Ninth Circuit Court of Appeals' precedent, such as *Avilez v. Garland*, which specifically stated:

> This opinion uses the term noncitizen unless quoting language from the immigration statutes or past opinions containing the term alien. There are two reasons behind this choice. First, use of the term noncitizen has become a common practice of the Supreme Court[.] Second, even if that were not the case, careful writers avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing. The word alien can suggest "strange," "different," "repugnant," "hostile," and "opposed," . . . while the word noncitizen, which is synonymous, . . . avoids such connotations. Thus, noncitizen seems the better choice.

*Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023) (cleaned up).

*Dep't of Homeland Sec.* (*D.V.D. II*), 821 F. Supp. 3d 102 (D. Mass. 2026), *cert. granted, judgment stayed, Dep't of Homeland Sec. v. D.V.D.* (*D.V.D. IV*), No. 26-426 (26A406), __ S. Ct. __, 2026 U.S. LEXIS 3044 (Sep. 29, 2026). (Doc. 14 at 5–7.) Additionally, Respondents assert that Petitioner's removal is reasonably foreseeable as Petitioner was accepted for third-country removal by Cameroon and was scheduled to be removed on September 27, 2026. (*Id.* at 7–9.) Respondents do not address any of the other two grounds asserted by Petitioner. *See generally* (*id.*)

Based upon the foregoing, and given that Petitioner's first and fourth grounds seek the same relief as his second and third grounds, the Court shall only address Petitioner's improper re-detention argument and his Due Process argument as to third-country removal.

**A. Respondents' Failure to Comply with Governing Regulations**.

Respondents' failure to revoke Petitioner's OSUP in compliance with 8 C.F.R. § 241.4(l) violates due process and mandates Petitioner's release.

Detention and removal of a noncitizen is governed by 8 U.S.C. § 1231, which dictates that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days[.]" 8 U.S.C. § 1231(a)(1)(A). During the 90-day removal period, continued detention is mandatory. 8 U.S.C. § 1231(a)(2). "After the 90-day removal period, the Attorney General has discretionary authority to detain certain [noncitizens] or to release them under an [OSUP]." *Perez v. Rosa*, No. CV-26-00038-PHX KML (JZB), 2026 U.S. Dist. LEXIS 96187, at *2 (D. Ariz. May 1, 2026).

"The right to remain under an OSUP, however, is not unlimited." *Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 U.S. Dist. LEXIS 215023, at *3 (C.D. Cal. Sep. 12, 2025). "Specific regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed, detained, and then released after ICE is unable to execute the order of removal." *Phouvieng K. v. Andrews*, No. 1:25-cv-01512-KES-SAB (HC), 2025 U.S. Dist. LEXIS 230785, at *9 (E.D. Cal. Nov. 24, 2025). "Section 241.4 applies to noncitizens who have been ordered removed

in general, while § 241.13 specifically applies to noncitizens whom the government has determined there is no significant likelihood that they can be removed in the reasonably foreseeable future." *Del Cid v. Mullin*, No. C26-1271-SKV, 2026 U.S. Dist. LEXIS 104972, at *6 (W.D. Wash. May 12, 2026) (cleaned up).

Under both 8 C.F.R. §§ 241.13(i) and 241.4(l), "revocation of release is allowed under two circumstances." *Tanashyan v. Mullin*, No. 5:26-cv-04455-SP, 2026 U.S. Dist. LEXIS 193841, at *8 (C.D. Cal. Aug. 27, 2026). "First, if a noncitizen violates any of the conditions of their release, they may be returned to custody." *Id.* (citing 8 C.F.R. §§ 241.13(i)(1), 241.4(l)(2)(ii)). "Second, a noncitizen's release may be revoked if, on account of changed circumstances, the agency determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* (cleaned up) (citing 8 C.F.R. §§ 241.13(i)(1), 241.4(l)(2)(ii)).

"[T]he Government has significant discretion to enforce the immigration laws and to revoke an Order of Supervision." *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025). Nevertheless, "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]" *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). Specifically, 8 C.F.R. § 241.4(l) requires that a "noncitizen will be notified of the reasons for revocation of his or her release, and will be given an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Constantinovici*, 806 F. Supp. 3d at 1162–63 (collecting cases that recognize that "§ 241.4(l)(1)'s procedural requirements apply equally to revocation of a noncitizen's release pursuant to § 241.4(l)(2)").

"It is a well-known maxim that agencies must comply with their own regulations." *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) (quoting *Ramon-Sepulveda v. Immigr. & Naturalization Serv.*, 743 F.2d 1307, 1310 (9th Cir. 1984)); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268, 74 S. Ct. 499, 503 (1954). "[T]he *Accardi* doctrine . . . is 'a commonplace rule of administrative law that an agency must obey its

own rules even if it had no obligation to create those rules in the first place.'" *Trong Nguyen v. Rosa*, No. CV-26-01568-PHX-DWL (JZB), 2026 U.S. Dist. LEXIS 109004, at *4–5 (D. Ariz. May 18, 2026) (cleaned up) (quoting 32 C. Wright & A. Miller, Federal Practice and Procedure § 8172 (2d ed. Sept. 2025 update)).

Respondents, under their own regulations, were required to (a) provide Petitioner with the reasons for the revocation of his OSUP and (b) give Petitioner an informal interview shortly after his re-detention. *See id.* Petitioner asserts that Respondents failed to comply with either requirement. (Doc. 1 at 10–11.) Respondents do not address this argument in their Response. *See generally* (doc. 14.) Further, the declaration attached as an exhibit to their Response likewise fails to address whether notice and an informal interview were provided to Petitioner.[2] *See* (doc. 14-1 at 2–4.) Consequently, the evidence and pleadings provided to the Court lead to the conclusion that Respondents failed to comply with 8 C.F.R. § 241.4(l) when they re-detained Petitioner.

Now, "[t]o be clear, relief is not automatically warranted under the *Accardi* doctrine whenever an agency violates its own regulations—such a violation can be harmless." *Trong Nguyen*, 2026 U.S. Dist. LEXIS 109004, at *5 (citing *United States v. Calderon-Medina*, 591 F.2d 529, 530–31 (9th Cir. 1979)). But, Respondents' failure to comply with 8 C.F.R. § 241.4(l) was anything but harmless. Rather, it constituted a violation of due process, which is anything but harmless. *Cf. United States v. Raya-Vaca*, 771 F.3d 1195, 1206 (9th

---

[2] Respondents' failure alone to address the instant argument amounts to implicit consent to find in favor of Petitioner here. *See* LRCiv 7.2(i) ("[I]f . . . counsel does not serve and file the required answering memoranda, . . . such non-compliance may be deemed a consent to the . . . granting of the motion and the Court may dispose of the motion summarily."); *see also Bauerle v. U.S. Dep't of Health & Hum. Servs.*, No. CIV 12-532-TUC-CKJ, 2014 U.S. Dist. LEXIS 100180, at *15 (D. Ariz. July 22, 2014) ("Where a party does not respond to an argument, such failure to respond may be deemed a consent to granting the request."); *Next League Exec. Bd. LLC v. Biden*, 758 F. Supp. 3d 1029, 1036–37 (D. Ariz. 2024) ("when a party fails to respond to a motion, this District's Local Rules allow a court to deem the non-responsiveness as consent to the relief sought and summarily grant the motion."); *Wystrach v. Ciachurski*, 267 F. App'x 606, 607 (9th Cir. 2008) ("The court also did not abuse its discretion in applying its local rule summarily to grant defendants' motion to dismiss because plaintiffs failed timely to respond."); *e.g.*, *Gurdayal Singh v. Cantu*, No. CV-26-00860-PHX-KML (MTM), 2026 U.S. Dist. LEXIS 121274, at *3–4 (D. Ariz. June 2, 2026) ("Respondents did not address Singh's contention that they should bear the burden of proof by clear and convincing evidence at a bond hearing, so they have waived any argument to the contrary.").

Cir. 2014) (noting that the government's failure to comply with a regulation that "protect[s] fundamental due process rights" amounts to a violation of due process without requiring "a prejudice inquiry"), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). In any event, courts similarly faced with the government's abject failure to comply with the dictates of 8 C.F.R. § 241.4(l) "have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Constantinovici*, 806 F. Supp. 3d at 1164 (collecting cases). Consequently, the Court is 'in good company' in finding that the proper remedy for Respondents' failure to comply with 8 C.F.R. § 241.4(l) is the release of Petitioner.[3] *See, e.g.*, *M.P.P.P. v. Santacruz*, No. 2:26-cv-05246-RAO, 2026 U.S. Dist. LEXIS 124346, at *12 (C.D. Cal. June 1, 2026) (collecting cases where "courts[,] confronted with similar facts[,] have concluded that re-detention is unlawful and have ordered release").

**B. Process Regarding Third-Country Removal**.

The next matter the Court will address is what process, if any, Petitioner is entitled to regarding Respondents' attempts to deport him to Cameroon—a nation that Petitioner is neither a citizen nor native of.

The Immigration and Nationality Act ("INA") establishes what country a noncitizen may be removed to after an administratively final order of removal has issued. *See Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 339–41 (2005) (citing 8 U.S.C. § 1231(b)(2)). Specifically, the hierarchy of destinations for removal is as follows:

> (1) An alien shall be removed to the country of his choice . . . unless one of the conditions eliminating that command is satisfied; (2) otherwise he shall be removed to the country of which he is a citizen . . . unless one of the conditions eliminating that command is satisfied; (3) otherwise he shall be removed to one of the countries with which he has a lesser connection[;] or (4) if that is impracticable, inadvisable or impossible, he shall be removed to another country whose government will accept the alien into that country[.]

[3] Moreover, "ICE's failure to follow such regulations thereby also violated Petitioner's constitutional due process rights." *Constantinovici*, 806 F. Supp. 3d at 1165 (collecting cases).

*Id.* at 341 (cleaned up).

"The government is prohibited from removing a person to a third country where they may be persecuted or tortured." *Vashchuk v. Bondi*, 826 F. Supp. 3d 1282, 1290 (W.D. Wash. 2026). For example, the government may not remove a noncitizen to a country "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion"—*i.e.*, withholding of removal. 8 U.S.C. § 1231(b)(3)(A). Likewise, under the Convention Against Torture ("CAT"), the government may not remove a noncitizen to a country where they are likely to be tortured. *See* Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 113.

"Withholding of removal and CAT protection only restrict where the Government may remove a noncitizen to, not whether the noncitizen is subject to removal." *Kumar v. Wamsley*, 817 F. Supp. 3d 1059, 1065 (W.D. Wash. 2025); *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (noting that withholding of removal "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country."). Hence, a noncitizen's removal order remains valid and enforceable, just not to any country or countries of risk. *See Kumar*, 817 F. Supp. 3d at 1065.

To adequately address this issue, the Court must first determine whether Petitioner's claims are foreclosed here because he is a *D.V.D.* class member. If his claims are not foreclosed, the Court will then address the merits of the instant claim.

***1. Petitioner's Claims are Not Barred by D.V.D. Class Membership***.

The central thrust of Respondents' opposition to Petitioner's Petition is an argument that he is a *D.V.D.* class member seeking relief here that duplicates relief sought by the *D.V.D.* class. (Doc. 14 at 5–7.) Particularly, Respondents opine that Petitioner is a member of the *D.V.D.* class, (*id.* at 5), which includes:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18,

> 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

*D.V.D. v. United States Dep't of Homeland Sec.* (*D.V.D. I*), 778 F. Supp. 3d 355, 378 (D. Mass. 2025).

Because of Petitioner's class membership, Respondents aver that Petitioner is barred from seeking relief on his own here. (Doc. 14 at 5–7.) The Court disagrees.

A brief history of the *D.V.D.* class action is in order to address the issue of whether Petitioner's claims are precluded. *D.V.D.*, which is an out-of-circuit action, addressed "a simple question: before the United States forcibly sends someone to a country other than their country of origin, must that person be told where they are going and be given a chance to tell the United States that they might be killed if sent there?" *D.V.D. I*, 778 F. Supp. 3d at 364. On April 18, 2025, the court in *D.V.D.* certified the abovementioned class, *see id.* at 394, and on February 25, 2026, granted summary judgment in favor of the plaintiffs, declaring "that class members have the right to meaningful notice before removal to any third country . . . [and] have the right to a meaningful opportunity to raise a country-specific claim against removal before removal to any third country." *D.V.D. II*, 821 F. Supp. 3d at 167. The government timely appealed the final judgment to the First Circuit Court of Appeals which, on September 18, 2026, affirmed the district court's final judgment on notice and a right to be heard. *See D.V.D. v. United States Dep't of Homeland Sec.* (*D.V.D. III*), No. 26-1212, __ F.4th __, 2026 U.S. App. LEXIS 28742, at *51 (1st Cir. Sep. 18, 2026), *cert. granted, judgment stayed, D.V.D. IV*, __ S. Ct. __, 2026 U.S. LEXIS 3044. Shortly thereafter, the Supreme Court stayed the final judgment in *D.V.D.*, granted certiorari, and set an expedited briefing and argument schedule. *See D.V.D. IV*, __ S. Ct. __, 2026 U.S. LEXIS 3044, at *1. The Supreme Court did not provide any reasoning in its order. *See generally id.*

Several other courts within the Circuit, when provided with the same argument by the government, have found that a petitioner's *D.V.D.* class membership does not preclude

them from prosecuting their own individual claims. As several courts within this District have noted, Respondents' argument "fail[s] to recognize . . . that the Court's decision on this issue is discretionary." *Smith v. Vergara*, No. CV-26-04065-PHX-SHD (JFM), doc. 19 at *3 (D. Ariz. July 31, 2026) (citing *Crawford v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979)); *Adeli v. Rokosky*, No. CV-26-01949-PHX-DJH (ASB), doc. 69 at *11 (D. Ariz. June 29, 2026) ("Neither D.V.D. nor the First Circuit's ultimate resolution of its appeal are binding precedent on this Court."). Instead, "a district court may dismiss 'those portions of the complaint which duplicate the class action's allegations and prayer for relief.' . . . [b]ut . . . may not 'dismiss those allegations of the complaint which go beyond the allegations and relief prayed for in the class action.'" *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013) (cleaned up) (quoting *Crawford*, 599 F.2d at 893).

In the instant action, Petitioner does seek declaratory relief akin to the relief requested in *D.V.D. II*—namely, his request for declaratory relief that Respondents may not remove Petitioner to a third country absent notice and a right to be heard. *Compare* (doc. 1 at 12–13) *with D.V.D. II*, 821 F.3d at 167. But, Petitioner's Petition goes beyond declaratory relief, seeking injunctive relief precluding his removal "to Cameroon or any other country not designated in his final order of removal" absent notice and a meaningful opportunity to present a fear-based claim as to that country. (Doc. 1 at 12–13); (doc. 15 at 7.) Further, Petitioner's Petition does not "raise a complaint [for] systemic relief for detainees fearing third-country removal generally." *Phong Thanh Nguyen v. Scott*, 796 F. Supp. 3d 703, 730 (W.D. Wash. 2025) (cleaned up) (citing *Pride*, 719 F.3d at 1137).

Thus, the Court will not address Petitioner's duplicative requests for declaratory relief and instead address his requests to enjoin Respondents' attempts to remove him absent due process. The Court proceeds this way because Petitioner "may bring his independent claim for injunctive relief because it is not duplicative of the [*D.V.D.*] litigation" and, without such an opportunity, "would be powerless to petition the courts for redress of the violation until [*D.V.D.*] . . . has been fully resolved.[4]" *Pride*, 719 F.3d at

[4] The risk is especially apparent here given that Respondents intended to remove Petitioner without process within five days of taking him into custody. *See* (doc. 8 at 1.)

1137–38; *see. e.g.*, *A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1135–36 (E.D. Cal. 2025) (addressing merits of claims that were "not identical to the claims at issue in the *D.V.D.* class action").

***2. Respondents' Procedures Do Not Afford Due Process to Petitioner*.**

The Due Process Clause of the Fifth Amendment protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. CONST. amend. V. "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *Zadvydas*, 533 U.S. at 693 (cleaned up) ("[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

"It is beyond dispute that removal to a country where an individual is likely to experience persecution or torture is a substantial deprivation of liberty." *Kumar*, 817 F. Supp. 3d at 1068–69. Given the liberty interest at stake, courts throughout the Ninth Circuit have "concluded that due process requires the Government to give a noncitizen 'sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation.'" *Id.* at 1069 (quoting *Phong Thanh Nguyen*, 796 F. Supp. 3d at 727); *Ndandu v. Noem*, 819 F. Supp. 3d 1155, 1158 (S.D. Cal. 2026) (noting that the government "must provide the petitioner with adequate notice and an opportunity to be heard before removing him to a third country") (quoting *Azzo v. Noem*, No. 3:25-cv-03122-RBM-BJW, 2025 U.S. Dist. LEXIS 256030, at *22 (S.D. Cal. Dec. 10, 2025)); *Gomez v. Mattos*, 817 F. Supp. 3d 1002, 1012 (D. Nev. 2025) ("The Court finds that Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports him to a third country."); *Smith*, No. CV-26-04065-PHX-SHD (JFM), doc. 19 at *5–6 (same); *Vishal v. Chestnut*, 811 F. Supp. 3d 1179, 1186 (E.D. Cal. 2025) (same).

Courts within this circuit have found as such because of binding Ninth Circuit Court of Appeals precedent which holds that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates . . . the constitutional right to due process." *Andriasian v. Immigr. & Naturalization Servs.*, 180 F.3d 1033, 1041 (9th Cir. 1999) (citation omitted). Put differently, "[i]n the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x 724, 725 (9th Cir. 2016).

In the instant action, Respondents have not complied with the dictates of due process. That is, Petitioner, who, after being detained at a scheduled ICE check-in on September 22, 2026, was only provided oral notice of his scheduled removal to Cameroon, (doc. 1 at 2, 7–8), was not notified that Cameroon accepted him for removal three days earlier, (doc. 15 at 1), and was presumptively not notified that Respondents intended to remove him within five days until Respondents' filed their response to his Motion for TRO, (doc. 1 at 2, 7–8); (doc. 1-1 at 4–5); (doc. 9 at 1); (doc. 15 at 1–3), was not provided meaningful notice nor the right to present a fear-based claim. The sole processes that Respondents aver that Petitioner was provided was that U.S. Citizenship and Immigration Services received "credible" assurances that that "no aliens removed from the United States will be persecuted or tortured." (doc. 14 at 3 n.1) (citing (doc. 14-1 at 9–10) (containing a confirmation "that the Department of State has received diplomatic assurances from the Government of Cameroon that aliens removed there by the United States will not be persecuted or tortured, and that the Department has determined those assurances to be credible and reliable")). This process is insufficient under binding Ninth Circuit Court of Appeals precedent. *See Andriasian*, 180 F.3d at 1041. Consequently, Petitioner is entitled to relief on the instant claim.[5] *See, e.g.*, *Smith*, No. CV-26-04065-PHX-SHD (JFM), doc.

[5] As a final matter on the instant issue, the Court notes that the Supreme Court's September 29, 2026, stay of the final judgment in *D.V.D.* and grant of certiorari was granted without any explanation of reasoning or decision on the merits. "[S]ometimes, as is the case here, it is unclear why the Court determined a stay should be granted or which

19 at *6 (citing *Andriasian*, 180 F.3d at 1041); *Adeli v. Rokosky*, No. CV-26-01949-PHX-DJH (ASB), doc. 80 at *4–8 (D. Ariz. Sep. 24, 2026) (modifying the court's prior order to include language enjoining the respondents from removing the petitioners to third countries absent prior written notice and "a meaningful opportunity to contest removal to the identified third country, including any applicable appeals").

## IV. CONCLUSION.

In the instant action, Respondents, in their race to remove Petitioner to Cameroon—a country he is neither a citizen nor native of—have violated their own governing regulations and the Due Process Clause of the Fifth Amendment by failing to provide him with the process he is entitled to. These failures were not harmless. Rather, these failures led to a deprivation of one of the most fundamental rights—Petitioner's right to liberty. Consequently, he is entitled to relief. *Cf. Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 179 (1951) (Douglas, J., concurring) ("It is procedure that spells much of the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law."); *Malinski v. New York*, 324 U.S. 401, 414 (1945) (Frankfurter, J., concurring) ("The history of American freedom is, in no small measure, the history of procedure.").

Accordingly,

**IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (doc. 1) is **GRANTED IN PART** for the reasons stated herein.

**IT IS FURTHER ORDERED** that Respondent shall **IMMEDIATELY** release Petitioner from DHS custody.

---

argument it found likely to prevail on appeal." *Phong Thanh Nguyen*, 796 F. Supp. 3d at 732. In situations where the Supreme Court has provided "more detail and clarity . . . about why it is granting a stay, a district court can be "more confident . . . in treating the Court's opinion as precedential." *Id.* at 732 (citation omitted). "But here, the Court has offered no such reasoning. . . . [a]nd absent clear guidance from the Supreme Court . . . , this Court must follow well-established precedent" from the Ninth Circuit Court of Appeals. *Id.* at 732 (citation omitted); *Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 U.S. Dist. LEXIS 263058, at *14 (W.D. Wash. Dec. 19, 2025) ("This Court agrees with the other courts that have examined the issue that the Supreme Court's emergency stay of the *D.V.D.* injunction is neither binding nor persuasive, as it provides no reasoning and is thus too vague to apply here.").

**IT IS FURTHER ORDERED** that Respondent shall provide a notice of compliance within **THREE (3) DAYS** of releasing Petitioner from DHS custody.

**IT IS FURTHER ORDERED** that Respondents, their officers, and agents are **ENJOINED** from removing Petitioner from the United States to any third country without first providing him written notice of the country to which they intend to remove him and a meaningful opportunity to raise a country-specific fear-based claim against removal before a neutral judge, including an appeal of any decision or part thereof in that process.

**IT IS FURTHER ORDERED** that any pending motions are denied as moot and the Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 6th day of October, 2026.

Honorable John Z. Boyle
United States Magistrate Judge